**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-00200-CMA-KMT

AVALON CONDOMINIUM ASSOCIATION, INC,

     Plaintiff,

v.

SECURA INSURANCE, A MUTUAL COMPANY,

     Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

The matter before the Court is Plaintiff Avalon Condominium Association, Inc.'s

Motion for Partial Summary Judgment (Doc. # 62), in which it requests that the Court

make a legal determination that pursuant to the Secura Policy, Defendant could take

only one deductible for its loss, instead of the eight deductibles it applied to Plaintiff's

claim.  The Court finds that the deductible at issue must be calculated and applied

separately for each of Plaintiff's eight buildings and, thus, Plaintiff's motion is granted in

part and denied in part.  Also before the Court is Defendant Secura Insurance

Company's Amended Motion for Partial Summary Judgment (Doc. # 71), in which it

contends that it acted reasonably in handling Plaintiff's claim and, thus, the Court should

enter summary judgment on Plaintiff's bad faith claims.  The Court finds that Defendant

had a reasonable basis for not making payment on Plaintiff's claim.  Accordingly, the

Court grants Defendant's motion.

## I.   **BACKGROUND**

Defendant issued a Business Protector Policy, policy number 20-BP-003187254-

1/100, to Plaintiff for the period of December 30, 2011, to December 30, 2012 (the

"Secura Policy").  (Doc. # 62 at 2.)  At the same time Plaintiff purchased the Secura

Policy from Defendant, Plaintiff also purchased, from Lloyd's of London, deductible buy-

back policy number CUG101213-059, which was effective from December 29, 2011, to

December 29, 2012 (the "Lloyd's Policy").  (Doc. # 107-1 at 6.)  The coverage

purchased under the Lloyd's Policy was "Wind Deductible Buy-Back Coverage" in the

amount of $166,727 per occurrence.  (*Id.* at 3.)  The "Insured's Retention" under the

Lloyd's Policy amounted to $7,500 per occurrence, which—when added to the Wind

Deductible Buy-Back Coverage—equaled $174,227.  (*Id.* at 6.)

On July 6, 2012, each of the roofs on Plaintiff's eight condominiums sustained

damage after a hail and windstorm; therefore, the property manager of the Avalon

condominiums, Brittney Johnson, contacted Warren Erickson, a Service Division

Manager at JP Roofing, requesting that he inspect the roofs.  (Docs. ## 62 at 3; 71 at

2.)  After inspecting the roofs in July of 2012, Mr. Erickson stated that, "[t]here is no hail

damage to speak of, and the wind damage was repaired."[1]  (Doc. # 71 at 3.)  Despite

Mr. Erickson's finding, in October of 2012, Plaintiff retained public adjuster Peter Ridulfo

---

[1] Although Plaintiff disputes that JP Roofing was qualified to determine whether any roof damage was wind or hail related, the fact that Mr. Erickson stated he did not find hail damage is undisputed.  (*See* Doc. # 68-4.)

of David Greeson Adjusters, Ltd., who conducted an inspection and determined that each of Plaintiff's eight roofs needed to be replaced in their entirety and estimated that the cost to replace the roofs would be $464,951.30.  (Doc. # 71 at 4.)  In providing a basis for the roof replacement, Mr. Ridulfo broadly indicated that the estimate was wind and hail related.  (*Id.* at 4–5.)

On October 30, 2012, Plaintiff, through Mr. Ridulfo, sent a notice of its claim to Defendant for damage to the roofs due to the "hail/wind" loss that occurred on July 6, 2012.  (*Id.* at 5.)  After receiving the notice, Defendant assigned it to Senior Field Representative Tony Suriano, who sent an email the same day to PT&C Forensic Consulting Services, requesting that they assign an engineer to work with him on Plaintiff's claim.  (*Id.*)  Corey Schrauben, a professional engineer, was selected, and he inspected the roofs of Plaintiff's condominiums on April 29, 2013, and May 9, 2013. (Doc. # 68-29 at 1.)  After his inspection, Mr. Schrauben drafted a letter of findings and informed Defendant that the roofing was not hail-damaged, but "exhibited isolated wind damage."  (*Id.* at 2.)

On May 23, 2013, Mr. Suriano, on behalf of Defendant, sent a letter to Plaintiff stating:

> Please be advised that in determining the amount of the deductible, we will deduct an amount equal to 2% as shown in the Schedule of the Limit of Insurance.  This deductible is calculated separately for, and applies separately to each building.  We will not pay for loss or damage until the amount of loss or damage exceeds each respective deductible.  The policy coverage for this loss shows a Statement of Values of $8,711,368.00 for 8 structures[,] which equates to $1,088,921.00 per building.  Therefore[,] a $21,778.42 deductible applies to each structure and an aggregate deductible of $174,227.36 applies to the entire loss.

(Doc. # 62-3 at 1.)  Mr. Suriano also informed Plaintiff that Defendant's inspection of the roofs "revealed no hail related collateral damage to the shingles or gutters, which would warrant repairs," but that "minimal pea size impacts . . . [and] minimal isolated wind damage [was] found." (*Id.* at 2.)  Defendant determined that the cost to fix the damage to the roofs was less than the Secura Policy's deductible; therefore, Defendant did not make a payment to Plaintiff.  (*Id.*)  Plaintiff disagreed with Defendant's interpretation of the Secura Policy and asserted that Defendant could take only one deductible for the loss, rather than the eight deductibles it applied to Plaintiff's claim.  (*See* Doc. # 62 at 5.)

The portions of the Secura Policy at issue in the instant case are the Multiple Deductible Coordination ("MDC") endorsement and the Windstorm or Hail Percentage Deductible endorsement ("Windstorm Endorsement").  The MDC provides, in pertinent part: "[t]he total amount deducted from all damages for any single applicable occurrence, event, or accident will not exceed the largest applicable deductible." (Doc. # 62-1 at 17.)  The Windstorm Endorsement states:

> This Deductible is calculated separately for, and applies separately to:
> 1.     Each building, if two or more buildings sustain loss or damage.

(*Id.* at 18.)  The Secura Policy also explicitly states that each building has a 2% windstorm deductible.  (*Id.* at 2–9.)

On January 23, 2014, Plaintiff filed a complaint against Defendant alleging three claims for relief: (1) breach of the Secura Policy; (2) statutory bad faith under C.R.S. §§ 10-3-1115, 1116; and (3) common law insurance bad faith.  (Doc. # 4.)  On October 24, 2014, Plaintiff filed a Motion for Partial Summary Judgment requesting that the

4

Court make a legal determination that pursuant to the Secura Policy, Defendant could apply only one deductible for Plaintiff's loss.  (Doc. # 62.)  On November 11, 2014, Defendant responded, and Plaintiff replied on December 16, 2014.  (Docs. ## 67, 73.) On December 10, 2014, Defendant filed an Amended Motion for Partial Summary Judgment, contending that it acted reasonably in handing Plaintiff's claim and, thus, the Court should enter summary judgment on Plaintiff's bad faith claims.  (Doc. # 71.) Plaintiff responded on April 14, 2015, and Defendant replied on April 28, 2015.  (Docs. ## 130, 141.)  Also on April 14, 2015, Plaintiff filed a motion for voluntary dismissal of its common law insurance bad faith cause of action, which the Court granted on April 21, 2015.  (Docs. ## 129; 135.)

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   DISCUSSION

### A.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff asserts that the Multiple Deductible Coordination ("MDC") endorsement modifies and trumps the 2% Windstorm or Hail Percentage Deductible endorsement ("Windstorm Endorsement") to require only one deductible for a single occurrence because (1) the MDC endorsement states that "[a]ll deductibles will apply to each coverage part within the policy"; (2) the MDC endorsement does not contain the

6

language, "per building," to allow the taking of a windstorm deductible on multiple buildings for a single occurrence; and (3) the June 6, 2012 hail and windstorm was a "single occurrence."  Defendant counters by stating that the MDC endorsement is consistent with the Windstorm Endorsement and, thus, the deductible at issue must be calculated and applied separately for each of the eight buildings.

Under Colorado law, an insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation.  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  The interpretation of a contract, including a contract for insurance, is a matter of law.  *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994).  In undertaking the interpretation of an insurance contract, the Colorado Supreme Court has warned that courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy.  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999).  Additionally, although courts construe ambiguous provisions against the insurer and in favor of providing coverage to the insured, courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage.  *Cyprus Amax Minerals Co.*, 74 P.3d at 299.  An insurer has the burden of demonstrating that a policy exclusion applies in the particular circumstances at issue and that the exclusion is not susceptible of any other reasonable interpretation.  *Compass Ins. Co.*, 984 P.2d at 614.

In the instant case, the MDC and the Windstorm Endorsement are neither ambiguous nor conflicting and the deductible at issue must be calculated and applied

separately for each of Plaintiff's eight buildings.  As noted previously, the MDC provides,

in pertinent part: "The total amount deducted from all damages for any single applicable

occurrence, event, or accident will not exceed the largest applicable deductible."  The

Windstorm Endorsement states:

> "This Deductible is calculated separately for, and applies separately to:
>   1.  Each building, if two or more buildings sustain loss or damage."

The Secura Policy separately lists each building—identified by building number—in its

policy declarations and includes the language "WINDSTORM/HAIL DEDUCTIBLE,

BP0312  2%" within each building policy declaration.  Additionally, the Windstorm

Endorsement explicitly and unambiguously states that the deductible is calculated and

applied separately to each building.  The Secura Policy also includes other deductibles

required of Plaintiff, such as an unspecified deductible of $2,500 and an "Optional

Coverage/Exterior Building Glass Deductible" of $250, both of which are listed under

each individual building policy declaration.  Although these deductibles are not at issue

in the instant case, Defendant argues, and the Court agrees, that their existence

indicates that the MDC endorsement is applicable when there are multiple deductibles

at issue for a single occurrence, as opposed to, as in the instant case, when there is

only one applicable deductible for a single occurrence—the windstorm or hail

deductible.  Indeed, the MDC specifies that "**[a]ll** other coverage terms and conditions

shall apply," which undoubtedly includes the Windstorm Endorsement.  Accordingly, the

Court finds, as a matter of law, that the MDC and the Windstorm Endorsement are

neither ambiguous nor conflicting.  Thus, because Plaintiff filed a claim alleging that the

damage to its roofs was caused by the June 6, 2012 hail and windstorm, the deductible

at issue must be calculated and applied separately for each of Plaintiff's eight buildings.[2]

Accordingly, Plaintiff's Motion is granted in part and denied in part.  The Court finds, as a matter of law, that the deductible at issue must be calculated and applied separately for each of the eight buildings.

## B. DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant argues that it acted reasonably in handing Plaintiff's claim and, thus, the Court should enter summary judgment in its favor on both of Plaintiff's bad faith claims.[3]

Under Colo. Rev. Stat. § 10–3–1115, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  The statute further provides that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  *Id.* at § 10–3–1115(2). In reviewing a bad faith claim, "the reasonableness of an insurer's conduct is measured objectively based on industry standards."  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011).  Additionally, an insurer acts reasonably when challenging

---

[2] Although the Court did not consider the Lloyd's Policy in interpreting the terms of the Secura Policy because it was extrinsic to the Secura Policy, this interpretation is consistent with Plaintiff's original interpretation of the deductible provision.  As previously noted, at the same time Plaintiff took out the Secura Policy, it also took out a Wind Deductible Buy-Back Coverage policy from Lloyd's of London in the same amount as the deductible applicable on the Secura Policy—$174,227.36—less thirty-six cents.

[3] The Court need not decide whether Plaintiff has successfully stated a common law bad faith claim because Plaintiff voluntarily dismissed this claim.  Thus, only Plaintiff's statutory bad faith claim remains.

claims that are "fairly debatable."  *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275

(Colo. 1985) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)).

Ordinarily, what constitutes reasonableness under the circumstances is a question of

fact for the jury.  *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo.

App. 2008).  In appropriate circumstances, however, "as when there are no genuine

issues of material fact, reasonableness may be decided as a matter of law."  *Zolman*,

261 P.3d at 497 (citing *Bankr. Estate of Morris*, 192 P.3d at 524).

In the instant case, Plaintiff does not allege that Defendant delayed its

investigation of, or its decision regarding its claim.[4]  The sole issue is whether

Defendant delayed or denied authorization of payment for a covered benefit without a

reasonable basis for that action.  Plaintiff alleges that genuine issues of material fact

exist as to whether Defendant had a reasonable basis for denying payment of Plaintiff's

insurance claim because (1) Defendant improperly applied the deductible provisions to

Plaintiff's claim by incorrectly interpreting the Secura Policy; and (2) in making its

decision on Plaintiff's claim, Defendant relied upon a report produced by Corey

Schrauben, who is an incompetent and unreliable engineer.  Because the Court found,

*supra*, that Defendant correctly interpreted the Secura Policy, Defendant was not

unreasonable in determining that it was not required to make payment on Plaintiff's

---

[4] Plaintiff asserts that its bad faith claim is "not that Defendant delayed in making its decision on Avalon's claim, but that Defendant denied Avalon's insurance claim without a reasonable basis and delayed the payment of the Secura Policy benefits to which Avalon was entitled."  (Doc. # 130 at 1.)  Plaintiff also explicitly states that it does not contend that Defendant delayed in the investigation of its claim.  (*Id.* at 3.)  Plaintiff insists that "the proper determination for the Court on Defendant's motion is solely whether or not Defendant 'delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.'"  (*Id.*)

insurance claim because the cost of repairs due to wind damage was less than the deductible on the claim. *See Lindsay v. Nat'l Lloyds Ins. Co.*, No. CIV-08-1131-D, 2010 WL 1329754, at *7 (W.D. Okla. Mar. 29, 2010) (Oklahoma law) ("An insurer does not act in bad faith where it legitimately disputes the interpretation of an insurance policy.").

As for Mr. Schrauben, Plaintiff contends that he was "incredible to rely upon" because he (1) incorrectly determined the causation of the unsealed shingles on Plaintiff's property; (2) refused to accept Mr. Ridulfo's opinion and independently investigate whether wind can uplift or unseal shingles without creasing or folding the shingles; (3) is incapable of "ag[ing]" hail strikes; and (4) is biased because he rendered an opinion in a prior Nationwide claim that most of the roofs on a complex be replaced, which was subsequently overruled.

The facts pertaining to Defendant's reliance on Mr. Schrauben's report are undisputed and they demonstrate why, as a matter of law, Defendant's reliance on the report was not unreasonable. After receiving Plaintiff's claim, Defendant assigned it to Mr. Suriano, who requested that PT&C Forensic Consulting Services ("PT&C") assign an engineer to work with him on Plaintiff's claim. PT&C selected Mr. Schrauben to work with Mr. Suriano. Mr. Schrauben's selection was not unreasonable because he was qualified; he received a Bachelor of Science in Civil Engineering from Michigan Technological University, a Master of Science in Civil Engineering from Georgia Institute of Technology, and was an Engineer in Training for three years prior to passing the civil engineering exam to become licensed in Georgia, and later, Colorado. After Mr. Schrauben conducted an investigation on April 29, 2013, and May 9, 2013, he

submitted a letter of findings on May 22, 2013, in which he identified himself as a Professional Engineer.

In his letter of findings, Mr. Schrauben explained his methodology in performing the roof inspection, stating that he "performed close visual and tactile examination of 10-foot by 10-foot test squares on slopes facing each primary cardinal direction on the subject roofs and general visual inspection of the remainder of the roof covering outside of the test areas."  Test squares are a common method used by claims adjusters to investigate damage to roofs allegedly caused by hail.  *See e.g.*, *Shaohua Huang v. State Farm Fire & Cas. Co.*, No. 5:14-CV-00069-RN, 2015 WL 1539799, at *4 (E.D.N.C. Apr. 7, 2015) (State Farm marked off test squares to identify hail damage); *Autumn Glen Homeowners Ass'n, Inc. v. Travelers Ins. Co.*, No. 1:13-CV-01589-SEB, 2015 WL 1256391, at *5 (S.D. Ind. Mar. 18, 2015) (finding that Travelers Insurance Company's claims representatives and adjusters follow established procedures when investigating hail damage, which includes marking off test squares).  Although Plaintiff disagrees with Mr. Schrauben's findings, mere disagreement of this sort is insufficient for Plaintiff to sustain its bad faith claim.  *Packer v. Travelers Indem. Co.*, 881 S.W.2d 172, 176 (Tex. App. 1994) ("A *bona fide* controversy concerning an insurer's liability is sufficient reason for an insurer to fail to pay a claimant, and will not rise to the level of bad faith.  This is particularly true if this controversy concerning liability is sparked by reliance on expert reports.").

The reasonableness of Defendant's reliance is further bolstered by the fact that Mr. Schrauben's report was consistent with Mr. Erickson's findings with respect to

damage of the roofs at issue.  After inspecting Plaintiff's condominium roofs in July of 2012, immediately following the storm, Mr. Erickson, a Service Division Manager at JP Roofing, stated that there was wind damage, but no hail damage.  Thus, it was not unreasonable for Defendant to rely upon Mr. Schrauben's findings in determining that the cost of repairs due to wind damage was less than the deductible.  Because it was only responsible for payment of a claim amount that exceeded the deductible, Defendant did not unreasonably deny payment of Plaintiff's claim.

Accordingly, the Amended Motion for Partial Summary Judgment filed by Defendant is granted and Plaintiff's bad faith claim under Colorado Revised Statutes sections 10-3-1115 and 10-3-1116 is dismissed with prejudice.

## IV.   CONCLUSION

Based on the evidence in record, it is ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The Court interprets the Secura Policy to require that the deductible for the eight condominium buildings at issue must be calculated and applied separately for each building.  It is

FURTHER ORDERED that the Amended Motion for Partial Summary Judgment filed by Defendant is GRANTED.  As a result of this ruling, the only count remaining for trial by a jury is Count 1—Breach of Contract.

DATED:  September 25, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge